# NO. 24-_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Joseph Chambers, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

Maplebear Inc., d/b/a Instacart,

*Defendant-Appellee*.

Interlocutory appeal from an order of the
United States District Court for the Southern District of New York,
Civil Action No. 21-CV-7114 (JGLC)

**PLAINTIFF-APPELLANT'S PETITION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

Shannon Liss-Riordan, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com


*Attorney for Plaintiff-Appellant*

# Table of Contents

INTRODUCTION ................................................................................................. 1

QUESTION PRESENTED ................................................................................... 3

RELIEF SOUGHT ............................................................................................... 3

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................. 4

STANDARD FOR INTERLOCUTORY APPEAL UNDER ...................................... 6

28 U.S.C.A. § 1292(**B**) ........................................................................................ 6

ARGUMENT ....................................................................................................... 6

    I.     The Section 1 Exemption to the FAA ................................................. 6

    II.    The Three Criteria for Interlocutory Appeal are Satisfied .................... 11

        A.    The issue of whether Instacart drivers are exempt from the FAA is a controlling question of law. ........................................................ 11

        B.    There are substantial grounds for difference of opinion regarding the underlying issue. ..................................................... 13

        C.    An Appeal will Materially Advance the Ultimate Termination of this Litigation, Regardless of the Outcome ..................................... 14

CONCLUSION .................................................................................................... 16

ii

# Table of Authorities

**Cases**

Airlines Co. v. Saxon,
    596 U.S. 450 (2022) .................................................................. 7, 8, 12

Aleksanian v. Uber Techs. Inc.,
    No. 22-98-CV, 2023 (2d Cir. Nov. 14, 2023) ...................................... 12

Bacashihua v. U.S. Postal Serv.
    859 F.2d 402 (6th Cir. 1988) ............................................................. 10

Bissonnette v. LePage Bakeries Park St., LLC,
    601 U.S. 246 (2024) .................................................................. 7, 8, 12

Carmona Mendoza v. Domino's Pizza, LLC,
    73 F.4th 1135 (9th Cir. 2023) ............................................................ 9

Christie v. Loomis Armored US, Inc.
    2011 WL 6152979 (D. Colo. Dec. 9, 2011) ........................................ 10

Circuit City Stores, Inc. v. Adams,
    532 U.S. 105 (2001) ......................................................................... 6

Granite Rock Co. v. Teamsters,
    561 U.S. 287 (2010) ......................................................................... 6

Haider v. Lyft, Inc.,
    2021 WL 1226442 (S.D.N.Y. Mar. 31, 2021) ................................. 11, 14

Islam v. Lyft, Inc.,
    2021 WL 2651653 (S.D.N.Y. June 28, 2021) ....................................... 6

Kuehner v. Dickinson & Co.,
    84 F.3d 316 (9th Cir. 2019) ............................................................. 15

Lee v. Postmates Inc.,
    2019 WL 1864442 (N.D. Cal. 2019) .................................................. 15

Levine v. Maplebear, Inc.,
    2022 WL 827290 (D. Mass. Mar. 18, 2022) ........................................ 13

Mejia v. RXO Last Mile, Inc.,
    2023 WL 5184153, at *1 (N.D. Cal. Aug. 10, 2023) ............................... 9

Murray v. UBS Securities, LLC,
    2014 WL 1316472 (S.D.N.Y Apr. 1, 2014) ........................................ 11

Nieto v. Fresno Beverage Co., Inc.
    33 Cal. App. 5th 274, 281-85 (Cal. Ct. App. 2019), reh'g denied (Mar. 27, 2019) ................. 10

Palcko v. AirborneExpress, Inc.
    372 F.3d 588 (3rd Cir. 2004) ........................................................... 10

Rittmann v. Amazon,
    971 F.3d 904 (9th Cir. 2020) ........................................................ 8, 9

iii

<u>S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc.</u>,
    579 F. Supp. 1049 (S.D.N.Y. 1984)............................................................... 15

<u>Silva v. Schmidt Baking Distribution, LLC</u>,
    2024 WL 3566168 (D. Conn. July 29, 2024) ............................ 2, 14, 16

<u>U.S. ex rel. Drake v. NSI, Inc.</u>,
    736 F. Supp. 2d 489 (D. Conn. 2010) ................................................... 13

<u>Waithaka v. Amazon</u>
    966 F.3d 10 (1st Cir. 2020), <u>cert. denied</u>, 141 S.Ct. 2886 (2021)........................................... 8, 9

<u>Weber v. United States</u>,
    484 F.3d 154, (2d Cir. 2007)................................................................. 14

<u>Williston v. Eggleston</u>,
    410 F. Supp. 2d 274 (S.D.N.Y. 2006)................................................... 12

**Statutes**

28 U.S.C. § 1292(b) .......................................................................... 1, 13, 14, 16

U.S.C. § 16(b) ................................................................................................... 6

U.S.C.A. § 1292(b) ...................................................................................... 2, 5

# INTRODUCTION

Petitioner Joseph Chambers respectfully petitions this Court pursuant to 28 U.S.C. § 1292(b) for permission to appeal from an Order of the United States District Court for the Southern District of New York.  The District Court has granted Plaintiff's request for permission to appeal.  See ECF No.61, Order dated August 27, 2024 (Clarke, J.), attached here as Exhibit A.  Specifically, the Court certified the following question for immediate appeal: whether a worker "who shops for and delivers groceries and other goods from local retailers to local consumers belong[s] to a 'class of workers engaged in . . . interstate commerce,' 9 U.S.C. § 1, such that the [Federal Arbitration Act] is inapplicable to the worker's contract?"  Id. at 15.

The District Court granted Defendant's motion to compel arbitration in this case and held that the Plaintiff was not exempt from the Federal Arbitration Act ("FAA") because there was no "basis to find that Plaintiff belongs to a class of workers who are actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce and play a direct and necessary role in the free flow of goods across borders."  ECF No. 61 at 13 (internal quotation marks omitted).  However, the District Court also recognized that several decisions are in tension with its holding and that the Second Circuit has not yet issued any binding authority regarding the extent to which a worker must be involved in the

1

movement of goods in interstate commerce in order to be exempt from the FAA.
See ECF No. 61 at 15-16. Thus, the Court certified this issue for interlocutory
appeal, finding that the three requirements contained in 28 U.S.C. § 1292(b) were
satisfied. Specifically, the District Court held that the application of the FAA
constituted a controlling question of law as to which there is a substantial
difference of opinion, as it was an issue of "'first impression for the Second
Circuit.'" Id. at 15 (quoting Silva v. Schmidt Baking Distribution, LLC, 2024 WL
3566168, at *3 (D. Conn. July 29, 2024) (certifying question of whether bread
delivery drivers were transportation workers exempt from the FAA)). Further, an
interlocutory appeal would materially advance the ultimate termination of the
litigation, because a resolution of this issue would "conserve judicial resources in
the longer term by resolving important and oft-arising legal questions." ECF No.
61 at 16 (quoting Islam v. Lyft, Inc., 2021 WL 2651653, at *5 (S.D.N.Y. June 28,
2021)).

The scope of the FAA's transportation worker exemption has been litigated
fiercely over the past few years. The Supreme Court has addressed the
transportation worker exemption at least three times since 2019, while the lower
courts have issued a number of differing opinions on what it means for a worker to
be "engaged in interstate commerce." See infra at 7-11. This appeal presents an

2

important opportunity for the Court to provide guidance to the lower courts on this critical issue.

Thus, Plaintiff respectfully requests that this Court grant Plaintiff's petition to pursue an interlocutory appeal in this case.

## QUESTION PRESENTED

The District Court has certified the following question for interlocutory appeal:

> Does a worker who shops for and delivers groceries and other goods from local retailers to local consumers belong to a "class of workers engaged in . . . interstate commerce," 9 U.S.C. § 1, such that the FAA is inapplicable to the worker's contract?

## RELIEF SOUGHT

Plaintiff asks this Court to certify and permit an appeal from the District Court's Order compelling arbitration, entered on August 27, 2024. ECF No. 61, Ex. A. The District Court certified this issue for appeal in that same Order. See id. If permission to appeal is granted, Plaintiff would request that the District Court's Order compelling arbitration be reversed and that the case be remanded to permit Plaintiff to pursue his wage-and-hour claims in court on his own behalf and on behalf of a proposed Rule 23 class.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On August 23, 2021, Plaintiff Joseph Chambers filed his Class Action Complaint against Instacart. Plaintiff alleges that Instacart has misclassified him and many thousands of other New York Instacart drivers as independent contractors when they are, in actuality, employees of Instacart under New York law. See generally ECF No. 61 at 2 (District Court Order summarizing claims and relevant facts). Accordingly, Plaintiff brings claims under the New York Labor Law on behalf of himself and all other similarly situated New York Instacart drivers pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff Chambers began driving for Instacart in Williamsville, New York in 2019. See ECF No. 61 at 2. Instacart is a nationwide same-day delivery service headquartered in California. Instacart delivers grocery and other non-food products. Deliveries may be scheduled through a mobile phone application or through Instacart's website. Instacart delivery drivers like Plaintiff Chambers deliver goods to Instacart's customers at their homes or businesses. For example, drivers make same-day deliveries from many retailers, including Dollar Tree, Wegmans, Tops Markets, Best Buy, Michaels, Family Dollar, Big Lots, Dick's Sporting Goods, and Sephora. Customers can request groceries and food items or a wide array of other goods and products (such as beauty products, cleaning products, medicines, or even computers, toasters, and microwaves). Indeed,

4

Instacart's website boasts that it offers "500 million products" from "40,000 stores" in "5,500 + cities." See Instacart Announces $265 Million in New Funding from Existing Investors, available at https://www.instacart.com/company/pressreleases/instacart-announces-265-million-innew-funding-from-existing-investors/ (last accessed November 29, 2021) ("About Instacart") (submitted at ECF No. 24-1). Customers select a delivery window (which can be the same day) and schedule a delivery from one of Instacart's delivery drivers who may shop for and deliver the order or simply pick up the order from the store and deliver it to the customer. See ECF No. 61 at 2. Instacart classifies its delivery drivers like Plaintiff as "independent contractors," but under New York law, they should be classified as employees.

At the outset of this Action, Defendant filed a motion to compel arbitration of the Plaintiff's claims. On August 27, 2024, the District Court granted the motion, holding in relevant part that Plaintiff was covered by the Federal Arbitration Act, despite that the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In that same Order, the District Court certified the issue for interlocutory appeal. See ECF No. 61 at 14-17. Plaintiff now files the instant petition with the Court of Appeals.

## STANDARD FOR INTERLOCUTORY APPEAL UNDER
## 28 U.S.C.A. § 1292(B)

In order to permit appeal of an interlocutory order, the Court must determine that such order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C.A. § 1292(b).

The question of whether Instacart delivery drivers are exempt from the Federal Arbitration Act satisfies all requirements of Section 1292(b). See Islam, 2021 WL 2651653 at *3 (holding that decision regarding the scope of the FAA transportation worker exemption satisfied the requirements for interlocutory appeal). The Federal Arbitration Act explicitly recognizes that an order compelling arbitration may be appealed as "provided in section 1292(b)." 9 U.S.C. § 16(b) (emphasis added). Thus, an appeal under Section 1292 is consistent with the FAA.

## ARGUMENT

### I. The Section 1 Exemption to the FAA

The Federal Arbitration Act ("FAA") was enacted in 1925. See 9 U.S.C. § 1, *et seq.* Its purpose was to put arbitration agreements on equal footing with any other contractual provisions. See Granite Rock Co. v. Teamsters, 561 U.S. 287,

302 (2010).  However, in Section 1 of the Act, Congress created an express

exemption for "contracts of employment of seamen, railroad employees or any

other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.

The Supreme Court clarified the meaning of the Section 1 exemption in Circuit

City Stores, Inc. v. Adams, 532 U.S. 105 (2001), holding that the term "class of

workers engaged in . . . interstate commerce" was limited to transportation workers

actually engaged in the movement of goods in interstate commerce.  Id. at 119.

Beginning in 2019, the Supreme Court has addressed the so-called

"transportation worker" exemption in a series of cases.  First, in a landmark

decision, New Prime, Inc. v. Oliveira, the Supreme Court held that a plaintiff truck

driver who was classified by the defendant trucking company as an "independent

contractor," as opposed to an employee, worked pursuant to a "contract[] of

employment" and was exempt from the FAA.  See 586 U.S. 105, 121 (2019).

Next, in Southwest Airlines v. Saxon, the Supreme Court considered

whether an airplane ramp supervisor who frequently loaded and unloaded cargo

from commercial flights was "engaged in interstate commerce" for purposes of

Section 1 of the FAA.  See 596 U.S. 450, 456 (2022).  The Court rejected the

argument that the worker had to actually cross state lines in order to be "engaged"

in interstate commerce.  See Saxon, 596 U.S. at 461 (rejecting airline's argument

that the "transportation worker exemption" is limited to "workers who physically

7

move goods or people across foreign or international boundaries"). The Court held that a worker is exempt from the FAA so long as she is engaged in transportation work such as loading cargo bound for an interstate journey "on a frequent basis," noting that the Section 1 exemption emphasizes "the actual work" typically performed by workers. Id. at 456-59.

More recently, in Bissonnette v. LePage Bakeries Park St., LLC, the Supreme Court rejected the notion that delivery drivers need to "work in the transportation industry" to be exempt from coverage under Section 1 of the FAA. See 601 U.S. 246, 256 (2024). Instead, the Court reaffirmed its prior decision in Saxon, noting that Section 1 "focuses on 'the *performance* of work' rather than the industry of the employer" such that "relevant question was what the worker does, not what the employer does generally." Id. at 253-54, quoting Saxon, 596 U.S. at 456. Thus, in Bissonnette, the Court doubled down on its holding in Saxon that the focus should be on the work actually performed by the workers and their active involvement in the movement of goods within the flow of interstate commerce. Bissonnette, 601 U.S. at 256.

Decisions by the First Circuit and Ninth Circuit hold that a delivery driver who does not personally cross state lines remains subject to the Section 1 exemption where she hauls "goods on the final legs of interstate journeys." See Waithaka v. Amazon, 966 F.3d 10, 26 (1st Cir. 2020), cert. denied, 141 S.Ct. 2886

(2021); (workers who "haul goods on the final legs of interstate journeys are transportation workers 'engaged in … interstate commerce' regardless of whether the workers themselves physically cross state lines."); Rittmann v. Amazon, 971 F.3d 904 (9th Cir. 2020), cert. denied, 141 S.Ct. 1374 (2020) (same class of last-leg delivery drivers are engaged in interstate commerce under the FAA where they carry goods that have crossed state lines and "remain in the stream of interstate commerce until they are delivered.")[1]; see also Carmona Mendoza v. Domino's Pizza, LLC, 73 F.4th 1135, 1138 (9th Cir. 2023), cert. denied sub nom. No. 23-427, 2024 WL 1706016 (U.S. Apr. 22, 2024) (delivery drivers who never crossed state lines while delivering pizza ingredients to Domino's franchisees were nonetheless exempt under Section 1 of the FAA because they were "transport[ing]

---

[1] On appeal, Instacart may attempt to distinguish the Amazon deliveries at issue in Waithaka and Rittman from the Instacart deliveries at issue here on the basis that the products that Instacart drivers deliver are already at in-state retail stores at the time that an Instacart customer orders them. However, there is no basis to assume that Amazon products are always delivered from out-of-state after Amazon customers place their order. Indeed, Amazon offers same-day delivery and one-day delivery of many of its products, which are very unlikely to travel to customers' homes from out-of-state in one day or less. Rather, it is clear that Amazon orders in bulk many of its products from out-of-state manufacturers, then those items are housed at Amazon's in-state warehouses until a customer decides to order that item, at which point Amazon Flex drivers are engaged to complete the last-mile delivery of that item to its final destination at the customer's home or business. That process is no different from Instacart deliveries of groceries and other non-food products that originated out-of-state, were shipped to in-state retail stores, and remained at the stores until a local customer ordered that item through Instacart, at which point an Instacart driver loads that item and transports it to the customer's home or business.

[interstate] goods for the last leg to their final destinations."); Mejia v. RXO Last Mile, Inc., 2023 WL 5184153, at *1 (N.D. Cal. Aug. 10, 2023) (finding that " 'last mile' delivery [drivers]" who "pick up [] merchandise at the merchants' stores or warehouses and ... deliver and install them at the customers' homes or businesses" were exempt from the FAA pursuant to Section 1); Nieto v. Fresno Beverage Co., Inc., 33 Cal. App. 5th 274, 281–85 (Cal. Ct. App. 2019), reh'g denied (Mar. 27, 2019) (intrastate liquor delivery driver was exempt from FAA). These decisions recognized that the delivery drivers themselves need not cross state lines in order to be engaged in interstate commerce, so long as the goods they are transporting have traveled across state lines. See, e.g., Palcko v. AirborneExpress, Inc., 372 F.3d 588, 593–94 (3rd Cir. 2004) ("[H]ad Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly.");[2] Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988) (postal worker who made intrastate deliveries was exempt from FAA); Christie v. Loomis Armored US, Inc., 2011 WL 6152979, *3 (D. Colo. Dec. 9, 2011) (currency delivery driver who did not cross state lines was engaged in interstate commerce because currency is within the flow of interstate commerce).

---

[2]    In Palcko, the court held that a supervisor who merely *supervised* intrastate delivery drivers was exempt.

District Courts in the Second Circuit have recently grappled with the question of whether so-called "gig economy" workers are "transportation workers" exempt from the FAA and have reached differing opinions. See Islam v. Lyft, Inc., 524 F. Supp. 3d 338, 356 (S.D.N.Y. 2021) ("[T]he Court concludes that the national class of rideshare drivers for companies like Lyft and Uber are transportation workers engaged in interstate commerce and therefore that they are exempt from being compelled to arbitrate under Section One of the FAA . . . ."); Haider v. Lyft, Inc., 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021) (finding that Lyft drivers fall within the FAA's exemption for contracts of employment of transportation workers). As the District Court noted below, despite the recent decisions from the Supreme Court and other Circuit Courts regarding the scope of the Section 1 exemption, "[t]he Second Circuit has not directly opined on how to determine whether a class of workers is engaged in interstate commerce for purposes of Section 1 of the FAA." ECF No. 61 at 15. This appeal squarely presents that question for the Court's consideration.

## II. The Three Criteria for Interlocutory Appeal are Satisfied

### A. The issue of whether Instacart drivers are exempt from the FAA is a controlling question of law.

In deciding whether there is a controlling question of law, a court may "consider whether reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action….." Murray v.

UBS Securities, LLC, 2014 WL 1316472, at *3 (S.D.N.Y. Apr. 1, 2014). The

district court "may also consider the system-wide costs and benefits of allowing

the appeal," including whether resolution of the issue "would aid district courts in

a large number of cases." Islam, 2021 WL 2651653 at *4 (internal quotation marks

omitted). Finally, the issue must be "a pure question of law that the reviewing

court could decide quickly and clearly without having to study the record."

Williston v. Eggleston, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (internal

quotations marks omitted).

The scope of the transportation worker exemption is a hotly contested issue

across the country, as evidenced by the large number of cases that have addressed

this issue in the past several years. See generally Bissonnette v. LePage Bakeries

Park St., LLC, 601 U.S. 246 (2024); Sw. Airlines Co. v. Saxon, 596 U.S. 450

(2022); Aleksanian v. Uber Techs. Inc., 2023 WL 7537627 (2d Cir. Nov. 14,

2023). Companies regularly deem their delivery drivers to be "independent

contractors" exempt from applicable wage-and-hour laws, while requiring them to

sign agreements containing mandatory, individual arbitration of all disputes

regarding their proper classification; thus, "it is reasonable to expect that this

practice will become even more common and will be litigated more frequently" in

the years to come. Silva, 2024 WL 3566168, at *3. Therefore, a ruling from the

12

Second Circuit on this issue would "provide valuable guidance to a great number of litigants and lower court judges." Id.

Moreover, application of the Section 1 exemption in this case presents a pure question of law. Id. Specifically, Plaintiff will argue on appeal that the Instacart drivers are engaged in interstate commerce when they deliver products to customers from local retail stores, while the District Court has held that Instacart drivers merely transport goods *intrastate* after the goods' interstate journey has finished at the retail store. See ECF No. 61 at 1. Thus, the District Court's Order "addressed a pure question of law that could significantly affect the conduct of the action and has significant precedential value, it constitutes a "controlling question of law" within the meaning of § 1292(b). See ECF No. 61 at 15.

### B. There are substantial grounds for difference of opinion regarding the underlying issue.

The second §1292(b) factor asks whether there are substantial grounds for difference of opinion regarding the issue a party seeks to appeal. See 28 U.S.C. § 1292(b). To fulfill this element, Plaintiff must show that "(1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." U.S. ex rel. Drake v. NSI, Inc., 736 F. Supp. 2d 489, 503 (D. Conn. 2010). Here, both criteria are satisfied.

Here, the District Court relied upon decisions from other district courts holding that similar Instacart drivers are not exempt from the FAA. See, e.g.,

13

Levine v. Maplebear, Inc., 2022 WL 827290 (D. Mass. Mar. 18, 2022). However, the lower court also recognized that there are decisions within the Second Circuit holding that similar gig economy workers are transportation workers exempt from the FAA, even if they do not regularly travel across state lines. See Islam, 524 F. Supp. 3d at 356 ("[T]he Court concludes that the national class of rideshare drivers for companies like Lyft and Uber are transportation workers engaged in interstate commerce and therefore that they are exempt from being compelled to arbitrate under Section One of the FAA . . . ."); Haider, 2021 WL 1226442 at *4 (finding that Lyft drivers fall within the FAA's exemption for contracts of employment of transportation workers). This conflicting authority at the district court level supports interlocutory appeal.

Moreover, the issue of how to determine whether a worker is sufficiently engaged in interstate transportation for purposes of the Section 1 exemption is a "particularly difficult" question of first impression at the Second Circuit. See generally Silva, 2024 WL 3566168 at *4 (certifying for interlocutory appeal the question of whether delivery drivers where exempt from the FAA). Thus, there is a substantial ground for disagreement and the second requirement of Section 1292(b) is satisfied.

### C. An Appeal will Materially Advance the Ultimate Termination of this Litigation, Regardless of the Outcome

The third factor asks whether allowing the appeal will materially advance the ultimate termination of the litigation. See Weber v. United States, 484 F.3d 154, 159 (2d Cir. 2007) (finding that Congress "sought to assure the prompt resolution of knotty legal problems" in passing § 1292(b)). Here, allowing Plaintiff to appeal now will avoid full litigation of the merits in an individual arbitration proceeding – including an evidentiary hearing on the merits – before appealing to the Second Circuit the question of whether the arbitrator ever had jurisdiction over his claims in the first instance. See S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc., 579 F. Supp. 1049, 1051 (S.D.N.Y. 1984) (granting permission to seek interlocutory review because "parties to this litigation will not have wasted two years in arbitrating claims that are later held to be nonarbitrable" if an appeal is successful). Thus, if this Court "hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court." Islam, 2021 WL 2651653 at *5; see also Lee v. Postmates Inc., 2019 WL 1864442 *4 (N.D. Cal. Apr. 25, 2019) (granting permission for interlocutory appeal to preserve "the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter.") (quoting Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 2019)); Klein v. Vision Lab Telecommunications, Inc., 399 F. Supp. 2d 528, 537 (S.D.N.Y. 2005) (stating that "[p]roceeding with the

15

case where the possibility exists that this Court lacks jurisdiction could force plaintiffs to try this case twice, once in federal court and again in state court" and certifying the issue for interlocutory appeal). Conversely, if Plaintiff appeals now and he is unsuccessful, he will proceed to arbitration for the ultimate termination of this case, and there would be no future appeal regarding application of the FAA.

In sum, it would be far more efficient for these issues to be resolved now, so that the parties will only have to litigate the merits of this case once. This is precisely the type of scenario where immediate review will materially advance the ultimate termination of the litigation regardless of the outcome of the appeal. As one District Court recently held, if an immediate appeal of this issue is not permitted, the result could be "exactly the type of protracted and fruitless litigation that § 1292(b) was designed to avoid." Silva, 2024 WL 3566168 at *5.

## CONCLUSION

Plaintiff respectfully requests that the Court certify the following question for interlocutory appeal, as set forth by the District Court:

> Does a worker who shops for and delivers groceries and other goods from local retailers to local consumers belong to a "class of workers engaged in . . . interstate commerce," 9 U.S.C. § 1, such that the FAA is inapplicable to the worker's contract?

Dated: September 6, 2024          Respectfully submitted,


 */s/ Shannon Liss-Riordan*_____
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 5 and 32(a)(7)(B), and I hereby certify that this brief contains 3,827 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: September 6, 2024         */s/ Shannon Liss-Riordan*_____
                                 Shannon Liss-Riordan
                                 Lichten & Liss-Riordan, P.C.
                                 729 Boylston Street, Suite 2000
                                 Boston, MA 02116
                                 (617) 994-5800
                                 sliss@llrlaw.com

                                 *Attorney for Plaintiff-Appellant*

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2024, true and correct copies of

the foregoing were served on counsel of record for each of the Defendant-

Appellees, via the CM/ECF system.


Dated: September 6, 2024       */s/ Shannon Liss-Riordan_____*
                              Shannon Liss-Riordan
                              Lichten & Liss-Riordan, P.C.
                              729 Boylston Street, Suite 2000
                              Boston, MA 02116
                              (617) 994-5800
                              sliss@llrlaw.com


                              *Attorney for Plaintiff-Appellant*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CHAMBERS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>-against-<br><br>MAPLEBEAR, INC. (d/b/a INSTACART),<br>        Defendant. | 21-CV-7114 (JGLC)<br><br>**<u>AMENDED OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff, a driver for the web-based delivery platform Instacart, brings this putative class action suit alleging that Instacart misclassified him and other drivers as independent contractors rather than employees. Instacart moves to compel arbitration pursuant to an arbitration clause in its contract with Plaintiff. There is no dispute that the arbitration agreement is valid and applies to Plaintiff's claims. Instead, Plaintiff argues that he qualifies for the "transportation worker" exception to the Federal Arbitration Act, which exempts a class of workers from the Act's mandatory arbitration regime if the class is "engaged in interstate commerce." Multiple courts have concluded that Instacart delivery drivers do not qualify for this exception, finding that although Instacart delivery drivers transport goods that have previously crossed state lines, they merely transport the goods *intrastate* from the finish of the goods' interstate journey (at a retail store) to the customer. Plaintiff provides no compelling reason for a different outcome here. Accordingly, the motion to compel arbitration is GRANTED and the case is STAYED pending arbitration. However, because this motion involves a controlling question of law that is unsettled in the Second Circuit, and an immediate appeal may materially advance the ultimate termination of the litigation, the Court CERTIFIES this Order for interlocutory appeal.

## BACKGROUND

Plaintiff brings this putative class action suit alleging that Defendant misclassified him and other New York Instacart drivers as independent contractors rather than employees of Instacart under New York law. ECF No. 1 ("Compl.") ¶ 2.

Instacart operates a nationwide delivery service for groceries and a variety of non-food items. ECF No. 19 ("Son Decl.") ¶ 2; Compl. ¶¶ 8–9 . Customers use the Instacart platform to connect with a local "Shopper," who shops for and delivers groceries and other items. Son Decl. ¶ 3. Instacart facilitates local delivery of goods stocked on the shelves of local retailers for later resale. ECF No. 25 at 6–7. Instacart "Shoppers" – delivery drivers like Plaintiff Chambers – deliver goods to Instacart's customers at their homes or businesses. ECF No. 24-1 ("Liss-Riordan Decl.") Ex. 1. Customers select a delivery window (which can be same day) and schedule a delivery from one of Instacart's delivery drivers, who may shop for and deliver the order or simply pick up the order from the store and deliver it to the customer. *Id*.; Compl. ¶¶ 8–9. Instacart does not play a role in how goods arrive at local stores. Son Decl. ¶ 4. On average, from 2018 through 2021, 99.8% of all Instacart Shopper deliveries were entirely intrastate. ECF No. 20 ("Tonti Decl.") ¶ 7.

To become a Shopper on Instacart's platform, applicants must sign a contract that includes a "scrollwrap"-type agreement to arbitrate disputes arising from a Shopper's relationship with Instacart and use of its platform. Son Decl. ¶ 7. Plaintiff signed such an agreement in September 2019, which provides that "the Parties agree that to the fullest extent permitted by law, ANY AND ALL DISPUTES OR CLAIMS BETWEEN YOU AND INSTACART shall be exclusively resolved by final and binding arbitration by a neutral arbitrator, including without limitation any and all disputes or claims BETWEEN YOU AND

INSTACART . . . ." Son Decl. Ex. B (the "Agreement") ¶ 8.1. The Agreement provides that it is

governed by the FAA, *id*., and contains a class action waiver, *id*. ¶¶ 8.4–8.5. Plaintiff signed

updated versions of Instacart's Agreement in January and December 2020 and there is no

indication that he ever opted out of the arbitration provisions of any of the Agreements he signed.

Son Decl. ¶¶ 13, 17.

    Pending before the Court is Defendant's motion to compel arbitration. ECF No. 17.

## LEGAL STANDARD

    The Federal Arbitration Act (the "FAA") "reflects a liberal federal policy favoring

arbitration agreements and places arbitration agreements on the same footing as other contracts."

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up). Under Section 2 of the

FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of

the FAA provides that parties can petition a district court for an order compelling arbitration. 9

U.S.C. § 4. The role of the courts is "limited to determining two issues: i) whether a valid

agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed,

neglected or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d

Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)).

    In considering a motion to compel arbitration, "courts apply a standard similar to that

applicable for a motion for summary judgment," deciding whether there is an issue of fact as to

the making of the agreement to arbitrate based on "all relevant, admissible evidence submitted

by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions

on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)

(cleaned up). "[T]he party resisting arbitration bears the burden of proving that the claims at

issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91

(2000). It may not satisfy this burden through "general denials of the facts on which the right to

arbitration depends . . . but must submit evidentiary facts showing that there is a dispute of fact

to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## DISCUSSION

There is no dispute that a valid arbitration agreement applies to Plaintiff's claims. The

instant motion hinges on whether Plaintiff belongs to a class that falls within the "transportation

worker" exception to the FAA. Multiple courts have concluded that Instacart Shoppers do not

qualify as exempt transportation workers under Section 1 of the FAA, finding that Instacart

Shoppers are not themselves actively engaged in transportation of goods in interstate commerce;

instead, there is a break in the chain of the channels of interstate commerce when the goods are

delivered to the retail store. These decisions have concluded that the subsequent and entirely

independent transaction in which Instacart Shoppers pick up and deliver the goods to Instacart

customers did not play a direct and necessary role in the interstate flow of goods so as to bring

Instacart Shoppers within the ambit of the transportation worker exemption. The logic of those

decisions applies here, and Plaintiff provides no compelling reason for a different outcome.

Accordingly, the motion to compel arbitration is GRANTED and the case is STAYED. However,

because this motion involves a controlling question of law that is unsettled in the Second Circuit,

and an immediate appeal may materially advance the ultimate termination of the litigation, the

Court CERTIFIES this Order for interlocutory appeal.

## I. There Is No Dispute That a Valid Arbitration Agreement Exists

"Although no party disputes this issue, the Court first addresses whether a valid

arbitration agreement exists." *New York Knicks, LLC v. Maple Leaf Sports & Ent. Ltd.*, No. 23-

CV-7394 (JGLC), 2024 WL 3237563, at *4 (S.D.N.Y. June 28, 2024) (internal citation omitted). Plaintiff Chambers agreed by contract to arbitrate "any and all disputes or claims between [Chambers] and Instacart," and agreed that "this Agreement shall be governed by the Federal Arbitration Act." Agreement ¶ 8.1. Plaintiff signed versions of Instacart's Agreement in September 2019, January 2020, and December 2020 and did not opt-out of the arbitration provisions. Although Plaintiff contests the enforceability of the class waiver in the arbitration clause under New York law, *see* ECF No. 24 at 13–17, it is undisputed that he agreed to arbitrate his claims against Instacart. The Court is satisfied that the arbitration clause in the Agreement represents a valid agreement to arbitrate.

## II.    The FAA's Transportation Worker Exemption Does Not Apply

Plaintiff invokes Section 1 of the FAA, commonly known as the "transportation worker" exemption, which excepts from the statute's ambit "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). Plaintiff argues that Instacart Shoppers are a "class of workers engaged in foreign or interstate commerce" exempt from the FAA. 9 U.S.C. § 1; ECF No. 24 at 5–12. The Court considers whether the FAA's transportation worker exclusion applies before compelling arbitration. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019).

The term "contracts of employment" in Section 1 of the FAA applies to "agreements to perform work," including those of independent contractors. *Id.* at 112–21. "Accordingly, the distinction between employees and independent contractors matters not for the threshold question of the FAA's applicability, regardless of its centrality to the underlying dispute." *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 250 (1st Cir. 2021) (citing *Waithaka v. Amazon.com, Inc.*,

966 F.3d 10, 17 (1st Cir. 2020)). No party disputes that the contracts at issue here are "contracts of employment."

The instant motion hinges on whether Plaintiff is part of a class of workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. "[The Court] begin[s] by defining the relevant 'class of workers' to which [Plaintiff] belongs. Then, [the Court] determine[s] whether that class of workers is 'engaged in foreign or interstate commerce.'" *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). The relevant "class of workers" to which Plaintiff belongs is based on the work actually performed. *Id*. at 456 (explaining that the relevant inquiry was what the plaintiff does at Southwest, not what Southwest does generally"); *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 254 (2024) (internal citation and quotation marks omitted) (explaining that the language of Section 1 "focuses on the performance of work rather than the industry of the employer"). In this case, Plaintiff belongs to a nationwide class of Instacart shoppers who shop for and deliver groceries and other goods from local retailers to local consumers. *See* ECF No. 60-1, *Burns v. Maplebear, Inc.*, No. 24-CV-4618 (JCD) (N.D. Ill. Aug. 7, 2024) at 4 n.3 ("The Court agrees with Instacart that, in determining the 'class of workers' to which the plaintiff belongs, the assessment should be made at the nationwide level, rather than any narrow, geographic region."); *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 350 (S.D.N.Y. 2021) ("The Court will accordingly assume for purposes of deciding this motion that the relevant class of workers to which Plaintiff belongs is the nationwide class of rideshare drivers for national companies that operate in a manner similar to Lyft and Uber.").

The crux of this motion is whether Instacart Shoppers are engaged in interstate commerce under Section 1 of the FAA. An exempt transportation worker need not actually cross state lines but must be:

actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce. In other words, any exempt worker must at least play a direct and necessary role in the free flow of goods across borders. These requirements undermine any attempt to give the provision a sweeping, open-ended construction, instead limiting § 1 to its appropriately narrow scope.

*Bissonnette*, 601 U.S. at 256 (cleaned up).

In *Saxon*, the Supreme Court found that a class of workers who physically load and unload cargo on and off airplanes were exempt transportation workers because they plainly performed "activities within the flow of interstate commerce when they handle goods traveling in interstate and foreign commerce, either to load them for air travel or to unload them when they arrive." 596 U.S. at 463 (internal citation and quotation marks omitted). In determining whether a class of workers is engaged in interstate commerce, courts have considered whether the class's work forms part of a single, unbroken stream of interstate commerce or whether interstate travel or commerce is a central or typical part of the job. *See Aleksanian v. Uber Techs. Inc.*, No. 22-98-CV, 2023 WL 7537627, at *2 n.3 (2d Cir. Nov. 14, 2023) (collecting cases). These considerations are in harmony with *Saxon*, which "teaches that the pivotal inquiry under Section 1 is whether the [workers] are 'far more removed from interstate commerce,' or instead perform 'activities within its flow.'" *Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 264 (E.D.N.Y. 2023) (quoting *Saxon*, 596 U.S. at 462); *Saxon*, 596 U.S. at 462 (distinguishing cases in which workers merely supplied "localized [ ] services to a corporation engaged in interstate commerce."). Unlike for the clearly exempt class of airplane cargo loaders in *Saxon*, "the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." 596 U.S. at 462 n.2.

Three courts have previously found that Instacart Shoppers do not qualify as exempt transportation workers under Section 1 of the FAA. *See Burns v. Maplebear, Inc.*, No. 24-CV-4618 (JCD) (N.D. Ill. Aug. 7, 2024) ("*Burns*"); *Levine v. Maplebear, Inc.*, No. 21-CV-11617-AK,

7

2022 WL 827290 (D. Mass. Mar. 18, 2022); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 282

(N.D. Ill. 2020). Another court found the same with respect to a similar class of delivery workers

for a competitor of Instacart. *See Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 838 (N.D. Ill. 2021)

(internal citation omitted) ("Like Shipt, Instacart facilitates same-day, on-demand grocery

shopping and delivery services in Illinois."). Based on the record before it, this Court reaches the

same conclusion.

In *Burns*, the court considered undisputed evidence – akin to the record in this case – that

approximately 99.6% of Instacart orders in the United States were intrastate. *Burns* at 4.

Applying the Seventh Circuit's holding – that "to fall within the [transportation worker]

exemption, the workers must be connected not simply to the goods, but to the act of moving

those goods across state or national borders," *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798,

800 (7th Cir. 2020) – the court found that Instacart Shoppers lacked the requisite direct

connection to interstate commerce, *Burns* at 5. The court distinguished the Ninth Circuit's

decision in *Rittmann* and the First Circuit's decision in *Waithaka*, which both found that certain

delivery workers employed by Amazon qualified for the Section 1 exemption because of their

role in the "last leg" or "last mile" of the packages' interstate journeys. *Burns* at 5 (citing

*Waithaka*, 966 F.3d at 10 and *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020)).

Instead, the court found that "[u]nlike goods awaiting departure at an Amazon warehouse

fulfillment center or an outbound plane, the goods handled by Instacart shoppers are not part of a

continuous flow of commerce. Their interstate journey ended once they reached the shelves of

the local retailer . . . In other words, the interstate transactions between the supplier and local

retailer are separate and distinct from the intrastate deliveries between Instacart shoppers and

consumers." *Id.* (internal citations omitted). Moreover, the court found "[t]he fact the goods once

moved through interstate commerce is not enough to bring Instacart shoppers within the exemption either." *Id.* (internal citation omitted). Thus, the court concluded that "[b]ecause Instacart shoppers do not play 'a direct and necessary role in the free flow of goods across borders,' they do not fall under § 1's residual clause and, thus, the transportation worker exemption does not apply." *Id.* (quoting *Bissonnette*, 601 U.S. at 256).

    *O'Shea* and *Young* also applied the Seventh Circuit decision in *Wallace* to reach the same result. Like *Burns*, *O'Shea* distinguished the Amazon delivery worker cases, reasoning that "not every worker who transports goods in connection with an interstate transaction is also 'actively engaged in the enterprise of moving goods across interstate lines.'" *O'Shea*, 508 F. Supp. 3d at 288 (quoting *Wallace*, 970 F.3d at 802). The court found that if "Section 1 exempted all those who move goods as a 'component of a larger series of Internet transactions,' it would encompass any number of workers, including, for example, a local pizza delivery driver dispatched after a customer places an online order—and the consensus among courts is that pizza (and other local food) delivery drivers do not fall within the Section 1 exemption." *Id.* (collecting cases). The court found Instacart Shoppers comparable to the non-exempt Grubhub delivery drivers in *Wallace*, finding that "drivers who deliver food purchased over the internet from a grocery store differ in no material way from drivers who pick up food purchased over the web from a restaurant . . . ." *Id.* at 287.

    *Young* reached the same conclusion, finding that "[t]he class of [Instacart] Shoppers are not directly engaged *in the channels* of foreign or interstate commerce, even when they transport goods that have crossed state lines." *Young*, 563 F. Supp. 3d at 838. The court also distinguished the Amazon delivery worker cases, finding that "from the moment these goods entered 'the flow of interstate commerce,' they already were 'destined for' the customers to whom the Amazon

Flex drivers made deliveries" whereas "[t]here is a break in the channels of commerce between the transportation of goods to a local retail store and the subsequent local purchases from that store by Shipt customers." *Id*. at 839 (quoting *Waithaka*, 966 F.3d at 20). In other words, the court found that "the flow in interstate commerce has ceased when the goods are delivered to the retail store, and the goods have come to a permanent rest within the state." *Id*. at 839 (quoting *Rittmann*, 971 F.3d at 916). That "drivers carry goods that have *already* moved across state lines at some earlier time" did not bring Instacart Shoppers within the ambit of the transportation worker exemption. *Id*. at 838.

*Levine* reached the same conclusion. *Levine* applied the First Circuit's decision in *Cunningham*, which held that Lyft drivers were not within the ambit of the transportation worker exception in part because Lyft and its drivers are not involved in arranging for the movement of goods or people across state lines. *Levine*, 2022 WL 827290, at *3 (citing *Cunningham*, 17 F.4th at 250). The court found that "Instacart does not contract for or control the interstate journey of the goods that drivers deliver locally; rather, the suppliers, distributors, grocery stores, and merchants facilitate the interstate journey of the goods. Instacart drivers merely contract with customers as 'part of the driver's normal local service' to take goods 'from the finish of the goods' interstate journey' to the Instacart customer." *Id*. (citing same). The court distinguished the Amazon delivery worker cases – where the "last-mile" or "last-leg" deliveries were part of a single interstate journey arranged by Amazon[1] – finding that there was no evidence of any agreements between Instacart and any supplier, distributor, or merchant of goods. *Id*. at *4.

---

[1] It appears likely that some portion of Amazon packages is brought to in-state warehouses without a specific customer in mind, then later delivered pursuant to same-day or next-day orders. *See* ECF No. 24 at 8. However, the case law finding Amazon delivery drivers to be

There is also no evidence in the record that Instacart contracts with any supplier, distributor, or merchant of goods to create the "integrated interstate transport effect" that some courts have considered when assessing whether Uber and Lyft drivers fall within the transportation worker exception. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 562 (3d Cir. 2023) (citing *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947)); *Cunningham*, 17 F.4th at 250–51 (1st Cir. 2021) (citing same); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–64 (9th Cir. 2021) (citing same); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 19–20 (D.D.C. 2021) (citing same). The record does not indicate that Instacart plays a role in interstate commerce akin to a taxi company contracting with a railroad or airport to provide an intrastate leg of transit in an interstate journey.

Because the *Burns*, *Levine*, *O'Shea*, and *Young* courts found that the transportation worker exception did not apply, the courts compelled individual arbitration pursuant to the FAA. *Levine*, 2022 WL 827290, at *5; *Burns* at 7; *Young*, 563 F. Supp. 3d at 839; *O'Shea*, 508 F. Supp. 3d at 289. Plaintiff provides no compelling reason for a different outcome here. *Saxon* and *Bissonnette* do not change the analysis. Those cases merely confirmed that the relevant inquiry for the transportation worker exception focuses on the work actually performed by the workers, rather than the industry in which their employer operates. These holdings do not disturb the conclusions of *Levine*, *O'Shea*, and *Young*, as the recent decision in *Burns* illustrates. The Amazon delivery worker and "last-mile/last-leg" cases remain distinguishable for the same reasons articulated in *Burns*, *Levine*, *O'Shea*, and *Young*.

---

exempt transportation workers does not appear to address this aspect of Amazon's business model, and there is no evidence in the present record that Instacart Shopper pickups and deliveries operate in a similar fashion to those from Amazon warehouses. And Plaintiff does not dispute that Instacart does not play a role in how goods arrive at local stores. *See* Son Decl. ¶ 4.

Plaintiff attempts to distinguish adverse cases concerning takeout delivery food drivers (such as *Wallace*) on the basis that, unlike here, the out-of-state ingredients were transformed or reconstituted into locally prepared meals, which broke the chain of interstate commerce. ECF No. 24 at 9–10. Regardless of the merits of this distinction, *see Young*, 563 F. Supp. 3d at 838 (citing *Wallace*, 970 F.3d at 802) ("[W]hether the goods are perishable or not makes no difference."), Plaintiff does not refute courts' conclusion that delivery of goods to the in-state destinations breaks the chain of interstate commerce. That conclusion followed because the interstate transaction between the supplier and the local retailer was entirely distinct from intrastate deliveries between the local retailers and the consumers. *Burns* at 5; *O'Shea*, 508 F. Supp. at 288; *Young*, 563 F. Supp. 3d at 839; *Levine*, 2022 WL 827290, at *3. Based on the record, the same is true here.

Plaintiff also points to a now-overturned Massachusetts state court case that found that Grubhub delivery drivers were exempt transportation workers. ECF No. 24 at 11 (citing *Archer v. GrubHub, Inc.*, No. 1984-CV-3277BLS1, 2021 WL 832132, at *7 (Mass. Super. Jan. 13, 2021), *rev'd and remanded*, 190 N.E.3d 1024 (Mass. 2022)). In that case, the court reasoned that "the ultimate customers for whom . . . those items are intended are the GrubHub customers who consumed or used them" with respect to pre-packaged and non-food items delivered by GrubHub drivers. *Id.* (internal citation and marks quotation omitted).

The Supreme Judicial Court of Massachusetts, however, reversed the Superior Court. It found that:

> [A]t the moment the goods at issue here entered the flow of interstate commerce, the destination was not the address of the Grubhub customer ordering the takeout food or convenience items for delivery. At most, the goods were destined for the local restaurants, delicatessens, and convenience stores that ordered them. Any subsequent journey taken by the goods in the hands of the Grubhub drivers, as

12

part of the takeout meal, was not part of the ongoing and continuous interstate transmission of these goods.

*Archer v. Grubhub, Inc.*, 190 N.E.3d 1024, 1032–33 (Mass. 2022). In accord with the Seventh Circuit's reasoning from *Wallace*, the court concluded that the Grubhub drivers "transported goods that had already completed the interstate journey by the time the goods arrived at the restaurant, delicatessen, or convenience store to which they were sent; as such, the plaintiffs are dissimilar to the railroad workers, seamen, or the other limited, interstate class of workers contemplated by Congress when enacting § 1 of the FAA." *Id.* at 1033. The court also distinguished the "last-mile driver" cases for the same reasons already discussed. *Id.* at 1032. This Court finds the higher court decision in *Archer* more persuasive than the overturned lower court decision. Moreover, the higher court decision in *Archer* accords with the well-reasoned decisions in *Burns*, *Levine*, *O'Shea*, and *Young*.[2]

The present record does not provide a basis to find that Plaintiff belongs to a class of workers who are "actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce" and "play a direct and necessary role in the free flow of goods across borders." *Bissonnette*, 601 U.S. at 256 (cleaned up). Thus, for substantially the same reasons as those stated in *Burns*, *Levine*, *O'Shea*, and *Young*, the Court finds, for purposes of the instant motion, that Instacart Shoppers are <u>not</u> exempt transportation workers under Section 1 of the FAA.

**III.    The FAA Requires Plaintiff to Arbitrate His Claims on an Individual Basis**

"The FAA requires courts to 'enforce arbitration agreements according to their terms,' including terms specifying 'with whom the parties choose to arbitrate their disputes and the rules

---

[2] *Archer* also accords with the subsequent First Circuit decision in a similar case regarding Postmates delivery drivers. *See Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022).

under which that arbitration will be conducted.' This mandate includes enforcing terms reflecting

the parties' intention 'to use individualized rather than class or collective action procedures.'"

*O'Shea*, 508 F. Supp. 3d at 289 (quoting *Epic Sys. Corp. Jacob Lewis Ernst & Young Stephen*

*Morris Nat'l Lab. Rels. Bd. v. Murphy Oil USA*, 584 U.S. 497, 506 (2018)). The contract here

states that "[b]y signing this Agreement, Instacart and you agree that each may bring and pursue

claims against the other only in their individual capacities, and may not bring, pursue or act as a

plaintiff, class representative, or class member in any purported class or collective proceeding or

action other than on an individual basis and only except to the extent this provision is

unenforceable as a matter of law." Agreement ¶ 8.4, *see also id*. ¶ 8.5. Thus, Plaintiff must

submit the claims in the Complaint to arbitration on an individual basis pursuant to the FAA. *See*

*Levine*, 2022 WL 827290, at *5; *Burns* at 7; *Young*, 563 F. Supp. 3d at 839; *O'Shea*, 508 F. Supp.

3d at 289; *Epic Sys.*, 584 U.S. at 502–03 (upholding validity of class waiver under the FAA);

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (finding that the FAA preempts

state law barring enforcement of a class-arbitration waiver).

　　Because the Court compels arbitration pursuant to the FAA, it need not analyze whether

New York law requires the same.

## IV.　The Court Certifies This Order for Interlocutory Appeal

　　Plaintiff asks the Court to certify an appeal from this interlocutory order compelling

arbitration. ECF No. 24 at 20–22. "When a district judge, in making in a civil action an order not

otherwise appealable under this section, shall be of the opinion that such order involves a

controlling question of law as to which there is substantial ground for difference of opinion and

that an immediate appeal from the order may materially advance the ultimate termination of the

litigation, [s]he shall so state in writing in such order." 28 U.S.C. § 1292(b). The Court is

satisfied that this Order meets the criteria set out in Section 1292(b), and accordingly will certify the Order for interlocutory appeal. Although the Second Circuit may address any issue included in this Order, the Court identifies the following question as potentially appropriate for resolution by the Second Circuit:

> Does a worker who shops for and delivers groceries and other goods from local retailers to local consumers belong to a "class of workers engaged in . . . interstate commerce," 9 U.S.C. § 1, such that the FAA is inapplicable to the worker's contract?

With respect to the 28 U.S.C. § 1292(b) statutory requirements, this Order involves a controlling question of law as to which there is substantial ground for difference of opinion. The scope of the FAA's transportation worker exemption is "a hotly contested issue across the country . . . ." *Silva v. Schmidt Baking Distribution, LLC*, No. 23-CV-01695 (MPS), 2024 WL 3566168, at *3 (D. Conn. July 29, 2024) (internal quotation marks omitted). Courts in this District have found that certain gig economy workers qualify for the transportation worker exemption. *See Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 356 (S.D.N.Y. 2021) ("[T]he Court concludes that the national class of rideshare drivers for companies like Lyft and Uber are transportation workers engaged in interstate commerce and therefore that they are exempt from being compelled to arbitrate under Section One of the FAA . . . ."); *Haider v. Lyft, Inc.*, No. 20-CV-2997 (AJN), 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021) (finding that Lyft drivers fall within the FAA's exemption for contracts of employment of transportation workers). The Second Circuit has not directly opined on how to determine whether a class of workers is engaged in interstate commerce for purposes of Section 1 of the FAA. *See Aleksanian v. Uber Techs. Inc.*, No. 22-98-CV, 2023 WL 7537627, at *2 n.3 (2d Cir. Nov. 14, 2023) (collecting cases). The Second Circuit has also not addressed the narrower question identified above, or similar questions such as "whether rideshare drivers fall under the transportation-worker exemption of 9

U.S.C. § 1." *Islam v. Lyft, Inc.*, No. 20-CV-3004 (RA), 2021 WL 2651653, at \*4 (S.D.N.Y. June

28, 2021). The Circuit has not yet issued a new decision in *Bissonnette* following the Supreme

Court's reversal and remand. In sum, the Second Circuit has not yet "clearly established a

framework for examining issues of the type discussed here." *Levine*, 2022 WL 827290, at \*5. For

the foregoing reasons, and because the instant application of the transportation worker exception

is "an issue of first impression for the Second Circuit . . . , it satisfies the 'substantial ground for

difference of opinion' prong of § 1292(b)." *Silva*, 2024 WL 3566168, at \*3.

  Finally, the Court finds that an interlocutory appeal "may materially advance the ultimate

termination of the litigation." 28 U.S.C. § 1292(b). If the Second Circuit hears the appeal and

holds that Plaintiff cannot be compelled to arbitrate under the FAA, it may save the parties "the

expense and burden of arbitration, and allow the case to proceed to resolution in district court."

*Islam*, 2021 WL 2651653, at \*5; *see also Silva*, 2024 WL 3566168, at \*4–5. Litigation involving

gig economy workers and delivery drivers is ubiquitous, and the legal questions raised by

Instacart's motion to compel arbitration have arisen frequently in district courts, including in this

Circuit. *See Islam*, 2021 WL 2651653, at \*5. An interlocutory appeal "may materially advance

the ultimate termination of the litigation," 28 U.S.C. § 1292(b), and would certainly, in the

Court's view, "conserve judicial resources in the longer term by resolving important and oft-

arising legal questions." *Islam*, 2021 WL 2651653, at \*5; *see also Silva*, 2024 WL 3566168, at

\*5 (certifying interlocutory appeal where "it is plausible that the Second Circuit might issue a

new rule regarding this question" and the issue presented had "significant precedential value for

workers across the country").

**CONCLUSION**

For the reasons stated herein, Defendant's motion to compel arbitration is GRANTED and this action is STAYED.

For the reasons stated in Section IV, this Order is certified for interlocutory appeal. The parties have **10 days** to file a notice of appeal. 28 U.S.C § 1292(b).

While this action is stayed, the parties are ordered to submit a joint status update **every 60 days from the date of this Order**.

The Clerk of Court is directed to STAY the case and to terminate ECF Nos. 17 and 21.

Dated: September 4, 2024
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge